# UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

---

|  |  |
|---|---|
| Ming Sen Shiue, | Civil No. 12-583 (RHK/LIB) |
| Petitioner, |  |
| v. | **REPORT AND RECOMMENDATION** |
| Warden, USO Marion<br> and<br>Minnesota Commissioner of Human<br>Services, |  |
| Respondents. |  |

---

This matter is before the Court upon Petitioner's application for habeas corpus relief under 28 U.S.C. § 2254, challenging his civil commitment by the State of Minnesota.[1] The case has been referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, it is recommended that this action be dismissed pursuant to Rule 4 of The Rules Governing Section 2254 Cases In The United States District Courts.[2]

---

[1] Although the Warden, USO Marion, is generically named as a defendant, the petition [Docket No. 1] alleges no violations by the Bureau of Prisons (BOP) or the Warden. Furthermore, Petitioner brings his petition under 28 U.S.C. § 2254, which governs a petitioner's challenge to state custody. Finally, in a letter to the U.S. Attorney's Office for the District of Minnesota, Petitioner acknowledges that he has brought no claims against any Federal defendants. (Shiue letter to Bildtsen, Decl. Brooker [Docket No. 31-1], at 1 ("the 2254 petition clearly attacks the unconstitutionality of Minnesota's premature commitment conviction exclusively. Nowhere was there [a] challenge to Federal laws, Bureau of Prison [sic] rules or the denial of release by the U.S. Parole Commission."). Consequently, the Court finds that there is in fact no claim made by Petitioner against or involving the conduct of any Federal defendant, the caption of the petition notwithstanding.

[2] Rule 4 provides that "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner."

## I.    BACKGROUND

Ming Sen Shiue (Petitioner) is a prisoner at the United States Penitentiary in Marion,

Illinois (USP Marion), where he is serving a life sentence imposed on September 17, 1980, by

the United States District Court for the District of Minnesota based on a conviction for

interstate transportation of a kidnap victim.  (Resp't Minn. Comm'er Human Servs.'s Mem.

Opp. Pet. Writ Habeas Corpus [Docket No. 13], at 1).

On September 29, 2010, the District Court of Anoka County, Minnesota (Anoka

County Court), determined Petitioner to be a sexually dangerous person (SDP) and a sexual

psychopathic personality (SPP) in accordance with the Minnesota Sexually Dangerous Person

Act (SDPA), and ordered that upon his release from federal custody Petitioner be committed

for treatment to a facility designated by the Minnesota Commissioner of Human Services

(Respondent).  (Pet. Writ Habeas Corpus [Docket No. 1], at 1).  The order requires that, upon

his release from federal custody, Petitioner be remanded to the custody of the Anoka County

Sheriff for transport to a treatment facility designated by the Respondent.  (Anoka County

District Court's Findings of Fact, Conclusions of Law and Order [Docket No. 16, Ex. 8], at

39).[3]  The treatment facility is required to file a written report with the Court within sixty (60)

days of Petitioner's entry into the treatment program, which the Anoka County Court will use

to make a final determination regarding Petitioner's civil commitment.  (Id. at 39-40).

Petitioner now challenges his state court civil commitment.[4]

---

[3] In accordance with Section V of the CIVIL Electronic Case Filing Procedures Guide, Respondent filed this
document and other materials related to Petitioner's civil commitment trial and appeals, and served them upon
Petitioner, conventionally rather than electronically.  These materials, filed as Exhibits to Docket No. 16, are on
file with the Court.

[4] Although "[i]ncarceration pursuant to a state criminal conviction may be by far the most common and most
familiar basis for satisfaction of the 'in custody' requirement in § 2254 cases . . ., federal habeas corpus review

## A.     Petitioner's Crimes and Convictions

Petitioner, as a teenager, developed a "crush" on, or a "school boy infatuation" with, his algebra teacher, M.S. (Anoka County District Court's Findings of Fact, Conclusions of Law and Order [Docket No. 16, Ex. 8], at 3). For years, Petitioner wrote stories about his sexual fantasies concerning M.S., fantasies that included rape and gang rape. (Id. at 4.) Even those fantasies that involved consensual sex included elements of pain and violence, and Petitioner wrote about feeling pleasure as a result of causing M.S. pain during sex. (Id.). At some point, Petitioner decided to kidnap M.S. so that he could carry out his sexual fantasies. (Id.). In 1975, Petitioner broke into a Duluth home belonging to M.S.'s in-laws, forced them to the ground at gunpoint, and threatened to kill them if they told the police. (Id.). Petitioner later found where M.S. lived, and tried three times to break into her apartment. (Id. at 4-5.)

On May 16, 1980, Petitioner saw M.S. at a salon in Roseville, Minnesota; when M.S. and her 8-year-old daughter, E.S., came out of the salon, Petitioner kidnapped them at gunpoint. (Id. at 5). Initially, Petitioner had M.S. drive the vehicle, while he kept a gun to E.S.'s head. (Id.). Later, Petitioner bound and gagged both M.S. and E.S. and forced them into the trunk. (Id.). During a stop, Petitioner kidnapped a 6-year-old boy named Jason Wilkman who had approached the vehicle. (Id.). Petitioner then drove to the Carols Avery Wildlife Refuge in rural Anoka County, where he removed Jason from the trunk and beat him to death. (Id. at 5-6).

Petitioner took M.S. and E.S. to his home in Roseville, blindfolded them, and chained them in a closet. (Id.). Petitioner repeatedly raped M.S., with the rapes sometimes lasting

---

may be available to challenge the legality of a state court order of civil commitment . . . ." Duncan v. Walker, 533 U.S. 167, 176 (2000); see also Linehan v. Milczark, 315 F.3d 920 (8th Cir. 2003) (affirming district court's denial of habeas corpus petition brought by petitioner challenging Minnesota civil commitment under Sexually Dangerous Person Act).

hours, and videotaped the rapes.  (Id. at 6-7).  Petitioner threatened to suffocate E.S. if M.S. did not behave the way he wanted, and told both M.S. and E.S. that if they tried to escape he would kill M.S.'s husband and son.  (Id. at 8).  During their captivity, Petitioner chained M.S. and E.S. inside a motor home that he drove to Illinois to attend a work-related conference. (Id. at 9).  Eventually, after more than seven (7) weeks in captivity, M.S. and E.S. were able to escape and call the police; Petitioner was arrested at his place of business.  (Id.).

While in jail awaiting trial, Petitioner offered another inmate $50,000 to kill M.S. and E.S. to prevent them from testifying or, in the alternative, to help Petitioner escape from jail. (Id. at 9-10).  After that inmate was released, Petitioner even mailed him a check for $1,000 as a down-payment.  (Id. at 9).  The inmate, instead, alerted the FBI.  Petitioner eventually was tried in federal court for transporting a kidnap victim across state lines, and in Minnesota state court for the kidnapping and murder of Jason Wilkman.  (Id. at 10).  During his federal court trial, Petitioner lunged at M.S. as she approached the witness stand, but was restrained by federal marshals.  (Id. at 12).  He was convicted and sentenced to life in prison.  (Id. at 13). During his state court trial, Petitioner smuggled a knife into the courtroom and attacked M.S. on the witness stand, slashing her face such that she required sixty-two (62) stitches; it took five deputies to subdue Petitioner.  (Id. at 12-13).  Petitioner was convicted in state court of kidnapping and second-degree murder, and sentenced to thirty (30) years in prison, to run concurrently with his federal sentence.  (Id. at 13).

### B.    Petitioner's Civil Commitment Hearing and Subsequent Appeals

The Anoka County Attorney began investigating a possible civil commitment order in 2007.  (Resp't Minn. Comm'er Human Servs.'s Mem. Opp. Pet. Writ Habeas Corpus [Docket No. 13], at 3-4).  Anoka County retained Dr. Paul Reitman, Ph.D., L.P. (Dr. Reitman), to

conduct a psychological examination to determine whether Petitioner met the criteria for civil commitment as an SDP and/or SPP. (Anoka County District Court's Findings of Fact, Conclusions of Law and Order [Docket No. 16, Ex. 8], at 14-15). Based on interviews with Petitioner, psychological testing, and a review of reports and records related to Petitioner's offenses and incarceration, Dr. Reitman on July 10, 2008, submitted a written report in which he opined that Petitioner met the statutory definitions for both SDP and SPP. (Id. at 15.) Based on Dr. Reitman's report, Anoka County on October 16, 2009, filed a petition for the civil commitment of Petitioner as an SDP and SPP. (Id.).

Subsequently, the Anoka County Court appointed Dr. Amanda Powers-Sawyer (Dr. Powers-Sawyer) as an examiner to provide an opinion concerning whether Petitioner met the criteria for civil commitment as an SDP or SPP. (Id.). Dr. Powers-Sawyer interviewed and performed psychological testing on Petitioner, and reviewed various records; based on that evaluation, Dr. Powers-Sawyer on January 15, 2010, submitted a written report in which she opined that Petitioner met the criteria for civil commitment as an SDP and SPP. (Id.).

After receiving Dr. Powers-Sawyer's report, Petitioner requested that a second examiner be appointed. (Id.). The Anoka County Court appointed Dr. Peter Marston (Dr. Marston) as the second examiner in January 2010. (Id. at 15-16). Dr. Marston interviewed Petitioner and reviewed various records. (Id. at 16). Dr. Marston concluded that Petitioner did not meet the criteria for civil commitment as an SDP or SPP, in part because of Petitioner's age, and in part because he found that Petitioner's mental and sexual disorders appeared to have diminished. (Id.). Dr. Marston did, however, testify that Respondent should have secure in-patient treatment that would allow professionals to continuously monitor Petitioner. (Id.).

A trial on the civil commitment of Petitioner was held April 19-27, 2010, before the Hon. Jenny Walker Jasper, Anoka County District Judge. Minnesota law[5] defines an SDP as a person who: "(1) has engaged in a course of harmful sexual conduct; (2) has manifested a sexual, personality, or other mental disorder or dysfunction; and (3) as a result, is likely to engage in acts of harmful sexual conduct." Minn. Stat. § 253B.02, Subd. 18c. The Anoka County Court found that Petitioner had engaged in sexually harmful conduct citing, among other factors, "the repeated rapes of M.S. over the course of the seven weeks [Petitioner] held M.S. captive." (Anoka County District Court's Findings of Fact, Conclusions of Law and Order [Docket No. 16, Ex. 8], at 16-17). The Anoka County Court further found that Petitioner suffers from a sexual, personality, or other mental disorder or dysfunction. (Id. at 17-23). In particular, the Anoka County Court, citing the reports and testimony of Dr. Reitman and Dr. Powers-Sawyer, found that Petitioner "suffers from significant mental health problems, including the paraphilia sexual sadism and a personality disorder." (Id. at 23). The Anoka County Court expressed reservations about the report and testimony of Dr. Marston, which the court found relied "solely on [Petitioner]'s self-reporting." (Id. at 20-22). Finally, based on the reports and testimony of Dr. Reitman, Dr. Powers-Sawyer, and Dr. James Gilbertson, among other factors, the Anoka County Court found that Petitioner was likely to engage in acts of harmful sexual conduct. (Id. at 23-30). Thus, the Anoka County Court concluded that clear and convincing evidence had been presented that Petitioner met the criteria for civil commitment as an SDP. (Id. at 39).

---

[5] Unless otherwise noted, citations to statutes and rules are to the 2010 version that was in effect at the time of the civil commitment proceeding and appeal.

The Anoka County Court also found that Petitioner met the criteria for civil commitment as an SPP. A sexual psychopathic personality is defined as

> The existence in any person of such conditions of emotional instability, or impulsiveness of behavior, or lack of customary standards of good judgment, or failure to appreciate the consequences of personal acts, or a combination of any of these conditions, which render the person irresponsible for personal conduct with respect to sexual matters, if the person has evidenced, by a habitual course of misconduct in sexual matters, an utter lack of power to control the person's sexual impulses and, as a result, is dangerous to other persons.

Minn. Stat. § 253B.02, Subd. 18b. The Anoka County Court found in Petitioner each of these conditions. (Anoka County District Court's Findings of Fact, Conclusions of Law and Order [Docket No. 16, Ex. 8], at 30-36). Thus, the Anoka County Court concluded that clear and convincing evidence had been presented that Petitioner met the criteria for civil commitment as an SPP. (Id. at 39).

Finally, the Anoka County Court found no less-restrictive alternative to civil commitment in the Minnesota Sex Offender Program existed. The Anoka County Court found that Petitioner "has never sought psychological or psychiatric services despite the fact that he knew such services were available," and that Petitioner "has not requested sex offender treatment despite the fact that in 1999 he was notified of his sex offender classification." (Id. at 14).[6] Based on the consistent conclusions of Dr. Reitman, Dr. Powers-Sawyer, and Dr. Marston, the Anoka County Court held that Petitioner requires in-patient sex offender treatment in a secure facility. (Id. at 36). The Anoka County Court found that Petitioner, at the time of the trial, had neither completed sex offender treatment, nor ever been in therapy for his mental health issues. (Id.). After noting that Petitioner could seek credit for

---

[6] Petitioner only first requested to participate in sex offender treatment within the federal prison system on May 15, 2010, more than two (2) weeks after the conclusion of his civil commitment trial. (Decl. Bickart [Docket No. 21], at 2, ¶ 7).

any sex offender treatment and/or therapy to address his mental health issues at a later date, (Id. at 36, n.8), the Anoka County Court determined that the only appropriate option was civil commitment in the Minnesota Sex Offender Program.  (Id. at 36, 39).

Petitioner filed his Notice of Appeal to the Minnesota Court of Appeals on November 11, 2010.  [Docket No. 16, Ex. 9].  Therein, Plaintiff identified only two grounds for appeal: "The Appellee did not proved [sic] by clear and convincing evidence that Appellant met the criteria as a Sexually Dangerous Person as defined in Minn. Stat. Sec. 253B.02 subd [sic] 18c. [sic] (2006) and did not proved [sic] by clear and convincing evidence that Appellant met the criteria as a Sexually Psychopathic Personality as defined by Minn. Stat. Sec [sic] 253B.02 Subd. 18b (2006)."  (Id. at 2).  However, in his brief to the Minnesota Court of Appeals, Petitioner raised two additional issues: "The Appellee did not present clear and convincing evidence at the District Court hearing that Appellant's release from a Federal life sentence will ever be relatively imminent so he could attend for [sic] sex offender treatment in Minnesota at a state hospital," and "The Appellant has been denied Due Processto [sic] his right to sex offender treatment in a state hospital because he has been deniedFederal [sic] parole."  ([Docket No. 16, Ex. 10], at ii).

Thus, three of the four arguments Petitioner raised to the Minnesota Court of Appeals concerned the sufficiency of the evidence presented at his civil commitment hearing; in his fourth argument, Petitioner asserted that he was denied a due process right to treatment (a) because his civil commitment contributed to the decision of the U.S. Parole Commission (Parole Commission) to deny Petitioner parole, and (b) because he has not been paroled, Petitioner cannot receive the treatment that civil commitment would provide.  (Id. at 36-38). The Minnesota Court of Appeals found that the evidence presented at his civil commitment

trial was sufficient to affirm the Anoka County Court's findings. In re Civil Commitment of Shiue, 2011 WL 1546607, at *4-9. The court further found that it could grant no relief regarding Petitioner's due process claim, because it lacked the authority to order that Petitioner be paroled from a federal sentence. Id. at *9.

Petitioner filed his Petition for Review with the Minnesota Supreme Court on April 26, 2011. [Docket No. 16, Ex. 13]. The Minnesota Supreme Court denied his petition. In re Civil Commitment of Shiue, No. A10-2006, slip op. (Minn. June 28, 2011).

### C. Petitioner's Federal Confinement: Parole and Sex Offender Treatment

Petitioner's initial parole[7] hearing was conducted on September 16, 2003, (Cert. Krapels [Docket No. 32], Ex. B, at 3-6). The Parole Commission decided to continue Petitioner "to expiration" based on its determination that Petitioner "pose[d] a serious threat to the community if released on parole at any time during this sentence." (Id. Ex. C, at 7-8). Petitioner appealed the Commission's decision, which was affirmed by the National Appeals Board. (Id. Ex. D, at 9). Petitioner received further interim hearings in 2007 and 2009. (Id. Ex. E, at 10-11; Ex. G, at 14-16). However, neither of the interim hearings resulted in a change in his "continuance to expiration" status. (Id. Ex. F, at 12-13; Ex. H, at 17-18).

Pursuant to federal statutes and regulations, Petitioner became eligible for "mandatory parole"[8] in 2010.[9] In June 2010, upon a review of the record, the Parole Commission

---

[7] Before it was repealed by the Comprehensive Crime Control Act of 1984 (Pub. L. 98-473, 98 Stat. 1976), 18 U.S.C. § 4205(a) provided that "Whenever confined and serving a definite term or terms of more than one year, a prisoner shall be eligible for release on parole . . . after serving ten years of a life sentence or of a sentence of over thirty years, except to the extent otherwise provided by law." Because Petitioner committed his crimes before November 1, 1987, he is eligible for parole in accordance with his judgment. See Billis v. United States, 83 F.3d 209, 201 n.2 (8th Cir. 1996). Petitioner's order of Judgment and Probation Commitment Order recommends that he "be eligible for parole after he has served a period of thirty (30) years." (Cert. Krapels [Docket No. 32], Ex. A, at 2).
[8] See generally LaMagna v. U.S. Bureau of Prisons, 394 F. Supp. 189 (D. Conn. 1980) (distinguishing mandatory parole from mandatory release).

9

determined that the record did not warrant a grant of parole and ordered a hearing to determine whether Petitioner met the criteria for mandatory parole.  (Cert. Krapels [Docket No. 32] Ex. I, at 19).  A hearing examiner conducted the mandatory parole hearing on October 7, 2010.  (Id. Ex. J, at 20-29).  Based on that hearing record, the Parole Commission found that Petitioner both had seriously violated the rules of the institution and that there was a reasonable probability that he would violate the law if paroled.  Consequently, the Parole Commission denied mandatory parole, and it again determined Petitioner's sentence should be continued "to expiration."  (Id. Ex. K, at 30-31).

## II.    DISCUSSION

### A.  Petitioner alleges seven (7) grounds that he asserts justify this Court in vacating his civil commitment.

- First, Petitioner argues that the Anoka County Court erred by proceeding under the presumption that he would be released from federal prison.  Petitioner argues that without evidence that he would actually be released from federal prison, the Anoka County Court had insufficient evidence to find any "likelihood of reoffense" for purposes of declaring him an SDP and SPP.  (Pet. Writ Habeas Corpus [Docket No. 1], at 6-8; Pet'r's Statement of the Case [Docket No. 1-1], at 1-2).

- Second, Petitioner argues that the Anoka County Court erred by failing to wait until after the Parole Commission determined whether Petitioner would be

---

[9] The law governing Petitioner's sentence provides that a prisoner serving a life sentence "shall be released after having served . . . thirty years of each consecutive term or terms of more than forty-five years," but that the Parole Commission "shall not release such a prisoner if it determines that he has seriously or frequently violated institution rules and regulations or that there is a reasonable probability that he will commit any Federal, State, or local crime.  18 U.S.C. § 4206(d) (repealed by Comprehensive Crime Control Act of 1984; see n.5, supra).  See also 28 C.F.R. § 2.53 (providing mandatory parole after thirty (30) years of a life sentence "unless pursuant to a hearing under this section, the Commission determines that there is a reasonable probability that the prisoner will commit any Federal, State, or local crime or that the prisoner has frequently or seriously violated the rules of the institution in which he is confined.")

released. Petitioner argues that the fact that he was not released by the BOP "reveals [the] cause for [Petitioner's civil] conviction to be unreasonable." (Pet. Writ Habeas Corpus [Docket No. 1], at 8-9; Pet'r's Statement of the Case [Docket No. 1-1], at 2-3).

- Third, Petitioner argues that the Anoka County Court erred in failing to find that a less-restrictive alternative to civil confinement was available. (Pet. Writ Habeas Corpus [Docket No. 1], at 9-11; Pet'r's Statement of the Case [Docket No. 1-1], at 4-5).

- Fourth, Petitioner argues that the Minnesota Court of Appeals erred in failing to reverse the lower State court. (Pet. Writ Habeas Corpus [Docket No. 1], at 11; Pet'r's Statement of the Case [Docket No. 1-1], at 5-6).

- Fifth, Petitioner argues that Minnesota's SDP/SPP statutes are unconstitutional if they allow civil commitment of a person who has not yet been released from prison, or whose release from prison is not imminent. Petitioner acknowledges that the U.S. Supreme Court generally upheld civil commitment statutes for sexual predators in Kansas v. Hendricks, 521 U.S. 346 (1997), but argues that his civil commitment constitutes an "unreasonable application" of Hendricks because the petitioner in Hendricks was actually scheduled for release from prison, whereas Petitioner was not. (Pet. Writ Habeas Corpus [Docket No. 1], at 11; Pet'r's Statement of the Case [Docket No. 1-1], at 6-7).

- Sixth, Petitioner argues that imposing civil commitment on a prisoner serving a life sentence before that prisoner has actually been granted parole constitutes cruel and unusual punishment in violation of the Eighth Amendment to the U.S.

Constitution. (Pet. Writ Habeas Corpus [Docket No. 1], at 11; Pet'r's Statement of the Case [Docket No. 1-1], at 7-10).

- Finally, Petitioner argues that Minnesota lacked jurisdiction over him to proceed under the state civil commitment statute because he was not in the state's custody. (Pet. Writ Habeas Corpus [Docket No. 1], at 11; Pet'r's Statement of the Case [Docket No. 1-1], at 11-13).

**B. Petitioner's Grounds One through Four Should be Dismissed Because They Fail to Raise a Federal Claim.**

**1. Standard of Review**

Federal habeas courts must engage in a "limited and deferential review of underlying state court decisions." Mark v. Ault, 498 F.3d 775, 782-83 (8th Cir. 2007). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Rather, relief is available only if the petitioner is in custody in violation of the Constitution or laws or treaties of the United States. Id. at 68; 28 U.S.C. § 2254(a). Additionally, relief is limited to cases where the state court's adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court, or that resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d).

**2. Analysis**

In the case now before the Court, the Minnesota Court of Appeals affirmed the Petitioner's state civil commitment, In re Civil Commitment of Shiue, No. A10-2006, 2011 WL 1546607 (Minn. Ct. App. Apr. 26, 2011), and the Minnesota Supreme Court denied his

petition for further review. <u>In re Civil Commitment of Shiue</u>, No. A10-2006, slip op. (Minn. June 28, 2011).

Petitioner, in each of the first four Grounds argued in his Petition, alleges that the State's trial and appellate courts committed errors of *state law* in finding that he is a SDP and SPP and, therefore, erroneously determined he was subject to state civil commitment.

In Ground One, Petitioner asserts that "[t]he trial court committed reversible error with findings made and evidences [sic] used for conviction based on hypothetical condition of [BOP] release. By disassociating absence of [BOP] parole from 'likelihood of reoffense' element required for SDP/SPP finding violate [sic] due process of fair trial." (Pet. Writ Habeas Corpus [Docket No. 1], at 6; Pet'r's Statement of the Case [Docket No. 1-1], at 1). In other words, Ground One asserts that Petitioner's civil commitment violated a provision of state law by finding him to be an SDP and SPP despite the fact that he had not yet been released from, and was not then imminently scheduled for release from, federal prison. Petitioner made the same argument based entirely on state law at each stage of the state appeal process. (Pet'r's Appellant's Brief to Minn. Ct. App. [Docket No. 16, Ex. 10], at 2-27; Pet'r's Pet. Review to Minn. Supreme Ct. [Docket No. 16, Ex. 13], at 1-2).[10] The Minnesota Court of Appeals relied entirely on state law in rejecting Petitioner's argument. <u>In re Civil Commitment of Shiue</u>, 2011 WL 1546607, at *4-8. Moreover, the "supporting facts" cited by Petitioner in his Statement of the Case, ([Docket No. 1-1], at 1-2), assert no specific "violation

_____

[10] Petitioner does not cite, and this Court has been unable to locate, any federal case law holding that a state's civil commitment statute may not be applied to a federal prisoner who is not scheduled for imminent release. However, it is interesting to note that in an arguably analogous case, the Minnesota Court of Appeals has upheld the civil commitment of a person who was subject to a federal deportation order, rejecting the arguments "that the fact that he is subject to a deportation order deprives the state court of jurisdiction to civilly commit him and makes him an 'improper candidate' for civil commitment. <u>In re Civil Commitment of Richards</u>, 738 N.W.2d 397, 398 (Minn. Ct. App. 2007).

of the Constitution or laws or treaties of the United States" as required for a proceeding under

28 U.S.C. § 2254(a). Consequently, Ground One should be dismissed. See Estelle, 502 U.S.

at 67 ("federal habeas corpus relief does not lie for errors of state law" (internal quotation and

citation omitted).[11]

In Ground Two, Petitioner asserts that "[t]he trial court committed reversible error to

fitness a finding before parole hearing decision under illusion Petitioner may be freed. The

U.S. Parole Commission refusal to set parole reveals cause for conviction to be unreasonable

determination founded not on real events but a release mirage that does not exist or occur."

(Pet. Writ Habeas Corpus [Docket No. 1], at 8; Pet'r's Statement of the Case [Docket No. 1-

1], at 2). In other words, Petitioner asserts that the Anoka County Court should have waited

until after Petitioner received a favorable federal parole hearing before proceeding with his

state civil commitment hearing. As in Ground One, Petitioner alleges that it was

unreasonable for the trial court to have found him to be "highly likely to reoffend" when he

---

[11] Although Petitioner asserts that this alleged error of state law "violate[s] due process of fair trial," he provides no support for this thin allegation of a federal interest. Petitioner was represented by counsel at his civil commitment hearing and throughout his state court appeals, however, he brings this Petition for Writ of Habeas Corpus *pro se*, and "as a general rule a *pro se* habeas petition must be given a liberal construction." Frey v. Schuetzle, 78 F.3d 359, 361 (1996). However, even construing his due process claim liberally to assert a federal procedural due process violation, the Court finds that no such violation occurred.

The United States Supreme Court has held that each state is free to determine the standard of proof necessary for a civil commitment hearing, so long as that standard exceeds the "preponderance of evidence" standard. Addington v. Texas, 441 U.S. 418, 431-33 (1979). Minnesota's civil commitment statute, which requires "clear and convincing evidence," meets that standard. Poole v. O'Keefe, Civ. No. 01-1460 (PAM/JGL), 2002 U.S. Dist. LEXIS 6534, at *4-5 (D. Minn. Apr. 10, 2002) (citing Minn. Stat. § 253B.18, subd. 1(a)). Moreover, that standard was applied in Petitioner's case. (Anoka County District Court's Findings of Fact, Conclusions of Law and Order [Docket No. 16, Ex. 8], at 39 (finding clear and convincing evidence that Petitioner met the definitions for SDP and SPP)), aff'd In re Civil Commitment of Shiue, 2011 WL 1546607 (Minn. Ct. App. Apr. 26, 2011).

Finally, even assuming that Petitioner raised a procedural due process argument to the Minnesota appellate courts, he has not demonstrated by evidence or argument in the record how the state courts' rulings on such a challenge were "'contrary to' established federal law" as clearly determined by the U.S. Supreme Court. See Closs v. Weber, 238 F.3d 1018, 1020 (8th Cir. 2001) (quoting Taylor v. Williams, 539 U.S. 362, 405 (2000) ("[A] state court decision is 'contrary to' established federal law if it contradicts the governing Supreme Court cases on a question of law or if, when confronting facts 'materially indistinguishable from the facts addressed in a Supreme Court decision, it reaches a different result.")).

was not, and still has not been, released from the federal prison. (Pet'r's Statement of the Case [Docket No. 1-1], at 3). Petitioner also made this same argument based on state law during his state court appeals. (Pet'r's Appellant's Brief to Minn. Ct. App. [Docket No. 16, Ex. 10], at 29-36). Again, the "supporting facts" cited by Petitioner, in his Statement of the Case, ([Docket No. 1-1], at 3), assert no specific "violation of the Constitution or laws or treaties of the United States." See 28 U.S.C. § 2254(a). Consequently, Ground Two should be dismissed. See Estelle, 502 U.S. at 67.

In Ground Three, Petitioner asserts that "[t]he trial court committed reversible error in finding U.S. laws, federal agency decisions and Department of Justice treatment programs do not meet clear and convincing evidence supporting less restrictive alternative consistent with patient treatment need, and requirement of public safety. Creating a 'consecutive' state commitment over 'concurrent' federal confinement and treatment is punative [sic] because it obviate [sic] future sex offender treatment and parole." (Pet. Writ Habeas Corpus [Docket No. 1], at 9-11; Pet'r's Statement of the Case [Docket No. 1-1], at 4-5). In other words, Petitioner challenges the sufficiency of the grounds for the trial court's determination, under state law, that "[t]here is no less restrictive alternative available to meet the [Petitioner]'s treatment needs and that is consistent with public safety, other than commitment to the Minnesota Sex Offender Program." (Anoka County District Court's Findings of Fact, Conclusions of Law and Order, [Docket No. 16, Ex. 8], at 39). Petitioner made this same argument based entirely on state law during his state court appeals. (Pet'r's Appellant's Brief to Minn. Ct. App. [Docket No. 16, Ex. 10], at 27-29).[12] The Minnesota Court of Appeals

---

[12] Petitioner briefly asserted in his Petition for Review to the Minnesota Supreme Court that he "demonstrated the availability of a less-restrictive alternative," ([Docket No. 16, Ex. 13], at 1), but neither argued this point any further, nor cited any authority.

relied entirely on state law in rejecting this argument.  In re Civil Commitment of Shiue, 2011 WL 1546607, at *8-9.  Here too, the "supporting facts," cited by Petitioner in his Statement of the Case, ([Docket No. 1-1], at 4-5), assert no "violation of the Constitution or laws or treaties of the United States."  See 28 U.S.C. § 2254(a).  Consequently, Ground Three should be dismissed.  See Estelle, 502 U.S. at 67.

In Ground Four, Petitioner asserts that "[t]he Appellate Court committed reversible error in failing to rectify fictitious release from [BOP] custody scenario and arbitrary findings of the trial court during de novo review."  (Pet. Writ Habeas Corpus [Docket No. 1], at 11; Pet'r's Statement of the Case [Docket No. 1-1], at 5-6).  In other words, Petitioner argues that the Minnesota Court of Appeals should have reversed the Anoka County Court and vacated his state civil commitment.  However, here too, Petitioner's arguments to the Minnesota Court of Appeals were based entirely on alleged violations of state law, and the state appellate court relied entirely on state law in affirming Petitioner's state civil commitment.  (See Pet'r's Appellant's Brief to Minn. Ct. App. [Docket No. 16, Ex. 10]); In re Civil Commitment of Shiue, 2011 WL 1546607).  Yet again, the "supporting facts" cited by Petitioner, in his Statement of the Case, ([Docket No. 1-1], at 4-5), assert no "violation of the Constitution or laws or treaties of the United States."  See 28 U.S.C. § 2254(a).  Consequently, Ground Four should be dismissed.  See Estelle, 502 U.S. at 67.

Because Petitioner's Grounds One, Two, Three, and Four fail to raise any specific issue of federal law, his Petition, to the extent based on these four Grounds, should be dismissed with prejudice.

**C.  Petitioner Failed to First Present Claims Five through Seven to the State Courts.**

Respondent first argues that all or part of Claims One, Two, Four, Five, Six, and

Seven should be dismissed because Petitioner failed to exhaust these arguments before the

Minnesota State courts. (Resp't Minn. Comm'er Human Servs.'s Mem. Opp. Pet. Writ

Habeas Corpus [Docket No. 13], at 26-30, 42).[13] Petitioner replies that his Grounds One

through Six were exhausted in the state courts, and that exhaustion is not required of Ground

Seven because exhaustion "would be futile . . . due to absence of state corrective process."

(Pet'r's Reply Supp. Pet. Writ Habeas Corpus [Docket No. 40], at 1).

### 1. Standard of Review

In pursuing a petition for habeas corpus, a petitioner must successfully show that he

exhausted state remedies for each claim that he brings. 28 U.S.C. § 2254(b)(1)(A). The

doctrine of exhaustion requires a petitioner to "fairly present" his federal claims to the state

courts. Baldwin v. Reese, 541 U.S. 27, 29 (2004). "[T]o fairly present a federal claim to the

state courts, the petitioner must have referred to a specific federal constitutional right, a

particular constitutional provision, a federal constitutional case, or a state case raising a

pertinent federal constitutional issue in a claim before the state courts." McCall v. Benson,

114 F.3d 754, 757 (8th Cir. 1997) (internal quotations and citations omitted). A petitioner

must present the substance of any federal claims "in each appropriate state court (including a

state supreme court with powers of discretionary review). Baldwin, 541 U.S. at 29.

When a prisoner fails to exhaust his state court remedies for a claim, and state

procedural rules preclude any attempt to satisfy the exhaustion requirement for that claim,

then the claim is not unexhausted, but rather "procedurally defaulted." Coleman v.

Thompson, 501 U.S. 722, 729-32 (1991). Thus, if a state court remedy remains, courts will

---

[13] Respondent, however, never specifies whether it thinks these claims should be dismissed with prejudice as procedurally barred, or dismissed without prejudice as unexhausted.

classify a previously unraised claim as "unexhausted." However, if state court remedies are no longer available, the failure to timely raise the claim "provides an independent and adequate state-law ground for the conviction and sentence," and the claim is procedurally defaulted. <u>Armstrong v. Iowa</u>, 418 F.3d 924, 926 (8th Cir. 2005).

"A claim is procedurally defaulted if not fairly presented in state court before raising it in federal court." <u>Cox v. Burger</u>, 398 F.3d 1025, 1031 (8th Cir. 2005) (citing <u>Abdulla v. Groose</u>, 75 F.3d 408, 4011-12 (8th Cir. 1996)). "A claim can be procedurally defaulted if it is not fairly presented to the state court and can no longer be reviewed by the state court because of the state's procedural rules." <u>Kirkorian v. Beltze</u>, Civ. No. 05-59 (RHK/JJK), 2009 WL 2591645, at *3 (D. Minn. Aug. 19, 2009) (Kyle, J.) (citing <u>McCall v. Benson</u>, 114 F.3d 754, 757 (8th Cir. 1997). A federal law claim is "fairly presented" to the state court if reference is made to a specific federal constitutional right, or to a federal or state court case which raises a relevant constitutional issue. <u>Id.</u> at *2 (citing <u>Cox</u>, 398 F.3d at 1031). "Presenting a claim that is merely similar to a federal habeas claim is not sufficient to satisfy the fairly presented requirement." <u>Barrett v. Acevedo</u>, 169 F.3d 1155, 1162 (8th Cir. 1999).

## 2. Analysis[14]

In Minnesota, the relevant procedural rule arises from <u>State v. Knaffla</u>. 309 Minn. 246 (Minn. 1976). In <u>Knaffla</u>, the Minnesota Supreme Court held that "where a direct appeal has once been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief." <u>Id.</u> at 252.[15] Additionally,

---

[14] Because the Court already has determined that Grounds One, Two, Three and Four should be dismissed for failure to assert any grounds for relief based on federal law, we need not consider whether those Grounds are also procedurally defaulted.

[15] "A claim that is procedurally defaulted under state law . . . is barred from federal review only if the state procedural rule is both (1) firmly established and (2) regularly followed. <u>Oxford v. Delo</u>, 59 F.3d 741, 744 (8 th

the Knaffla rule "extends to 'all claims that the appellant should have known at the time of [direct] appeal.'" Cooper v. State, 745 N.W.2d 188, 191 (Minn. 2008) (quoting McKenzie v. State, 687 N.W.2d 902, 905 (Minn. 2004)).

The Eighth Circuit recognizes two exceptions whereby a habeas petitioner can overcome a state procedural bar: (1) by showing of cause and prejudice, or (2) by proving actual innocence. Reagan v. Norris, 279 F.3d 651, 656 (8th Cir. 2002). Similarly, Minnesota recognizes two exceptions to the Knaffla rule: a claim otherwise procedurally barred may be heard if "(1) a claim is so novel that the legal basis was not available on direct appeal, or (2) the interests of justice require review." Perry v. State, 731 N.W.2d 143, 146 (Minn. 2007).

The question for the Court, then, is whether Petitioner "fairly presented" the putative federal nature of Grounds Five through Seven in support of his petition to the State's appeals courts, and if not, whether the Knaffla rule would bar Petitioner from raising those claims now. If Petitioner's claims are procedurally barred by the Knaffla rule, then this Court may only consider the merits of his claims if he meets one of the recognized exceptions.

### a. Plaintiff's Grounds Five and Six are Procedurally Defaulted.

Petitioner's Grounds Five and Six each raise issues that have not previously been fairly presented to the state courts of Minnesota. Furthermore, Petitioner has not demonstrated that any of these grounds falls within either the Eighth Circuit's exceptions to the procedural default rule, or within Minnesota's exceptions to the Knaffla rule.

In Ground Five, Petitioner argues that "Minnesota's SDP/SPP commitment statute is unconstitutional and violate [sic] federal law along with controlling U.S. Supreme Court

Cir. 1995) (citing Ford v. Georgia, 498 U.S. 411, 423-24 (1991)). The Knaffla rule meets these criteria. Carney v. Fabian, 441 F. Supp. 2d 1014, 1027 (D. Minn. 2006) (Kyle, J.); Kirkorian, 2009 WL 2591645, at *3.

precedent." (Pet. Writ Habeas Corpus [Docket No. 1], at 11; Pet'r's Statement of the Case [Docket No. 1-1], at 6-7). While Petitioner acknowledges that the U.S. Supreme Court generally upheld civil commitment statutes for sexual predators in <u>Kansas v. Hendricks</u>, 521 U.S. 346 (1997), he argues that his civil commitment by the state courts constitutes an "unreasonable application" of <u>Hendricks</u> because the petitioner in <u>Hendricks</u> was actually scheduled for release from prison, whereas Petitioner was not. (Pet'r's Statement of the Case [Docket No. 1-1], at 6-7). Petitioner further argues that the Minnesota statute also violates the Fourth Amendment by allowing for the "unreasonable seizure" of persons who have not yet been released, and are not scheduled for release, from federal prison. (<u>Id.</u> at 7). Respondent argues that Petitioner failed to exhaust these claims because two of the allegations contained therein, including the alleged Fourth Amendment violation, were not raised to the Minnesota state courts. (Resp't Minn. Comm'er Human Servs.'s Mem. Opp. Pet. Writ Habeas Corpus [Docket No. 13] at 28-29 (objecting to Petitioner's "supporting facts" No. 4 and No. 6)).

In Ground Six, Petitioner argues that "[a]pplication of civil commitment before parole is granted on life sentence produce [sic] Cruel and Unusual Punishment by denying adequate treatment while affecting original sanction from life without parole to death behind bars." (Pet. Writ Habeas Corpus [Docket No. 1], at 11; Pet'r's Statement of the Case [Docket No. 1-1], at 7-10). Petitioner further argues that "it is cruel and unusual for the state to burden Petitioner with dual commitment detainer that under federal rules eliminate [sic] him from federal residential sex offender treatment." (Pet'r's Statement of the Case [Docket No. 1-1], at 9). Respondent objects that neither of these arguments was presented to the Minnesota state courts. (Resp't Minn. Comm'er Human Servs.'s Mem. Opp. Pet. Writ Habeas Corpus [Docket No. 13] at 29).

Respondent is correct that these arguments were never fairly presented to the Minnesota state courts. Petitioner's arguments that the application of the Minnesota civil commitment statute to Petitioner effects an unreasonable extension of Hendricks, that the statute allows for his unconstitutional seizure in violation of the Fourth Amendment, and that he has suffered a violation of the Eighth Amendment prohibition against cruel and unusual punishment, do not appear anywhere in his brief to the Minnesota Court of Appeals, [Docket No. 16, Ex. 10], nor in his Petition for Review to the Minnesota Supreme Court. [Docket No. 16, Ex. 13]. Although Petitioner, as part of his challenges to the sufficiency of the evidence to support his civil commitment under the state statute, arguably presented the Minnesota state appellate courts with the underlying argument that a state civil commitment hearing is inappropriate for a person who has not been released, and is not scheduled for release, from federal prison, he "did not alert the court[s] to the federal nature of these claims by reference to a specific federal constitutional right, a federal case, or a state case raising a pertinent federal constitutional issue." Kirkorian, 2009 WL 2591645, at *4. Accordingly, Grounds Five and Six in support of his petition are unexhausted.

Further, the Knaffla rule would procedurally bar Petitioner from raising the federal nature of these claims in any further state court proceedings because upon his direct appeals in state court he either knew or should have known that such claims were available. Cooper, 745 N.W.2d at 190-91 (Knaffla rule applies both to claims known but not raised in direct appeal and to claims that appellant should have known of at the time of direct appeal). In the present case, Petitioner has not argued that he falls within the Eighth Circuit's exceptions to the procedural default requirement by showing that he is innocent, nor that he is prejudiced by the application of the Knaffla rule. Nor has he argued that he falls within the Minnesota

Supreme Court's exceptions to the Knaffla rule.  Thus, Ground Five and Six are also procedurally defaulted and should be dismissed with prejudice.

### b. Plaintiff's Ground Seven is Unexhausted, but May Still be Presented to the State Courts.

In Ground Seven, Petitioner argues that "Minnesota's conviction was unlawful because [the] state did not have primary legal custody and personal jurisdiction to civilly commit before federal discharge.  Committing a federal prisoner without release date creates conflict of comity with federal agency actions."  (Pet. Writ Habeas Corpus [Docket No. 1], at 11; Pet'r's Statement of the Case [Docket No. 1-1], at 11-13).  Respondent objects that one of the facts alleged in Ground Seven was not presented to the Minnesota state courts.  (Resp't Minn. Comm'er Human Servs.'s Mem. Opp. Pet. Writ Habeas Corpus [Docket No. 13] at 29).[16]

Petitioner argues that he presented his jurisdictional argument to the Minnesota Court of Appeals.  (Pet'r's Reply Mem. Supp. Pet. Writ Habeas Corpus [Docket No. 41], at 8-9 (citing Pet'r's Appellant's Brief to Minn. Ct. App. [Docket No. 16, Ex. 10], at 35).  In fact, the entirety of Petitioner's argument that the Minnesota state courts lacked jurisdiction does not appear anywhere in his brief to the Minnesota Court of Appeals, [Docket No. 16, Ex. 10], or in his Petition for Review to the Minnesota Supreme Court.  [Docket No. 16, Ex. 13].  Although Petitioner's Appellant's Brief does state that he was "in the process of being

---

[16] Respondent objects that Petitioner had not previously presented to the Minnesota state courts Ground Seven, Fact Six, which reads:

The lawful jurisdiction for Minnesota Civil Commitment under 253B.185 are persons "in the custody of the commissioner of corrections."  Petitioner was always in the legal custody of the Bureau of Prisons so federal commit statute takes precedence in this dual liability situation.
   i) Where prosecution under state and federal laws exists for same charge, whomever has primary legal custody shall gain jurisdictional control.
   ii) Minnesota never had or show [sic] evidence the U.S. Attorney [sic] Office relinquished federal jurisdiction in favor of state prosecution.
(Pet'r's Statement of the Case [Docket No. 1-1], at 11).

reviewed for a Federal civil commitment action," ([Docket No. 16, Ex. 10], at 35), Petitioner never identified this as a challenge to state court jurisdiction, nor otherwise "alert[ed] the court to [any] federal nature of [this] claim[]." Kirkorian, 2009 WL 2591645, at *4. Nor did Petitioner present this issue to the Minnesota Supreme Court. (See Pet'r's Pet. Review to Minn. Supreme Ct. [Docket No. 16, Ex. 13]). Thus, Plaintiff has not exhausted his jurisdictional argument in the Minnesota State courts.

Petitioner further argues that his jurisdictional argument is not subject to the exhaustion requirement because it "would be futile to exhaust due to absence of state corrective process." (Pet'r's Reply Supp. Pet. Writ Habeas Corpus [Docket No. 40], at 1). In support of his argument, Petitioner generally asserts "federal courts have found state remedies to be inadequate and futile . . . because (d) the state courts' statements or reasoning in denying the petitioner's other claims makes virtually certain that they also would reject the unexhausted claim." (Pet'r's Reply Supp. Pet. Writ Habeas Corpus [Docket No. 40], at 1 (citing Fed. Habeas Corpus Prac. & Proc. § 23.4[a][ii](5)(d)). However, Petitioner makes no specific showing that the Minnesota state courts have acted vindictively against him or otherwise demonstrated that it would be futile for him to pursue his claim in state court. Consequently, the Court does not excuse Petitioner here from the exhaustion requirement.

Further, reading Petitioner's Ground Seven liberally,[17] the Court concludes that Petitioner has raised an issue that he may still bring before the state courts of Minnesota. Petitioner argues that Minnesota may only bring a civil commitment action against a prisoner "in the custody of the [state] commissioner of corrections." (Pet'r's Statement of the Case

---

[17] Although Petitioner was represented by counsel at his civil commitment hearing and throughout his state court appeals, he brings this Petition for Writ of Habeas Corpus pro se, and "as a general rule a pro se habeas petition must be given a liberal construction." Frey v. Schuetzle, 78 F.3d 359, 361 (8th Cir. 1996).

[Docket No. 1-1], at 11 (quoting Minn. Stat. § 253B.185)).  Petitioner's selective quotation

notwithstanding, the statute actually provides that a petition to civilly commit a person as SDP

and/or SPP

> is to be . . . filed with the district court of the county of financial responsibility or
> the county where the patient is present.  If the patient is in the custody of the
> commissioner of corrections, the petition may be filed in the county where the
> conviction for which the person is incarcerated was entered.

Minn. Stat. § 253B.185 subd. 1.  The statute does not, as Petitioner suggests, bar the filing of

a civil commitment petition against any person not in the custody of the state correctional

system.  Rather, it establishes a default rule that such a petition should be brought in "the

district court of the county of financial responsibility or the county where the patient is

present," and allows for an alternative venue (the county where the subject of the petition was

convicted) if the subject of the petition is incarcerated by the state.  Id.

Construing his petition liberally, the Court reads Petitioner's Ground Seven as a

broader challenge to jurisdiction and venue as provided in Minn. Stat. § 253B.185 subd. 1.

Minnesota courts have described such a claim as a challenge to subject matter jurisdiction.

See In the Matter of the Civil Commitment of Lunsford, 2009 Minn. App. Unpub. LEXIS

978, at *2-3 (Minn. Ct. App. Sept. 1, 2009) (finding court had subject matter jurisdiction

because the civil commitment petition was filed in the district court of the proper county).

Whether the civil commitment petition against Petitioner was filed in the proper Minnesota

county is a question of state law, which should not be decided by this Court.  However, such a

challenge may be brought in the Minnesota state courts under Minn. R. Civ. P. 60.02.  In In re

Civil Commitment of Lonergan, 811 N.W.2d 635 (2012), the Minnesota Supreme Court held

that "there exists a narrow class of claims that may be brought under Rule 60.02 by a patient

indeterminately committed as an SDP or SPP.  Examples of these claims might include a commitment void for lack of jurisdiction . . . ." <u>Lonergan</u>, 811 N.W.2d at 643.  There is no evidence in the record that Petitioner has ever sought to challenge the jurisdiction of the Anoka County Court by means of a Rule 60.02 petition.  However, such a challenge need not have been brought as part of Petitioner's direct appeal, but instead need only be brought within a "reasonable time."  <u>In the Matter of the Civil Commitment of Lindsey</u>, 2011 Minn. App. Unpub. LEXIS 500, at *13 (Minn. Ct. App. May 23, 2011) ("a rule 60.02 motion that challenges a court's subject-matter jurisdiction must be brought within a reasonable time").

The Court finds that Petitioner has not exhausted his state court remedies with regard to Ground Seven, and that he may not be procedurally barred from doing so under applicable state law.  Consequently, the Court recommends that Petitioner's Ground Seven be dismissed without prejudice, so that Petitioner can return to the state courts and attempt to exhaust his presently unexhausted claim by filing a Rule 60.02 motion in the trial court if he so chooses.

## III.    CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1.  Plaintiff's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 [Docket No. 1] be DENIED;

2.  Plaintiff's Grounds One through Six be DISMISSED WITH PREJUDICE; and

3.  Plaintiff's Ground Seven be DISMISSED WITHOUT PREJUDICE.


Dated: January 25, 2013                    s/Leo I. Brisbois
                                           Leo I. Brisbois
                                           U.S. Magistrate Judge

25

**N O T I C E**

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by February 8, 2013**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.